**MAGNUS & EASTERMAN CO. et al. v. UNITED–CARR FASTENER CORPORATION.**

No. 5947.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

Rehearing Denied Oct. 13, 1932.

L. E. Giles, of New York City (Fraser, Myers & Manley, of New York City, and Whittemore, Hulbert, Whittemore & Belknap and Clarence B. Zewadski, all of Detroit, Mich., on the brief), for appellants.

L. G. Miller, of Boston, Mass. (Emery, Booth, Varney & Townsend, of Boston, Mass., and Barthel, Flanders & Barthel and Ralph S. Binns, all of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This is an appeal from a decree of the District Court adjudging valid and infringed claims 17 and 20 of the Carr patent 1,535,-981 and claim 10 of the Carr patent 1,535,-982, both issued April 28, 1925. The decree included the usual order for an injunction and an accounting. The defenses were anticipation and lack of invention. No claim was made that there was not infringement if the claims were valid.

The patents relate to a snap fastener mainly produced for use in attaching the floor rugs of an automobile to the floor boards. Claim 20 of the first patent and claim 10 of the second call for substantially the same article—a carpet fastener consisting of a stud fastened to the floor and a socket to engage the stud, the socket being attached to the under side of the carpet by a plurality of prongs extending from the periphery of the socket into the material and bent outwardly and downwardly over the web and concealed therein. Each also calls for a wall positioned between the prongs and the socket opening seated upon a support beneath the carpet to oppose the tipping of the socket relative to the stud and to provide a fulcrum against the underlying support for disengaging the socket from the stud. Claim 17 of the first patent is for a method for attaching a carpet fastener having at its periphery a plurality of upwardly projecting prongs comprising the forcing of the prongs through the web and bending them outwardly and downwardly to form hooks enclosing the web threads, the hooks being concealed to a substantial extent in the material.

Long before these patent applications were filed it was common to use sockets and studs to fasten materials together, the socket having means for resiliently engaging the stud or the stud having a plurality of resilient portions for entering into the socket. The lower court regarded the Shipman patent, No. 737,875, as the most pertinent reference in the prior art, but held that none of the earlier patents anticipated the patent claims in suit. The defendant insists that while Shipman is an important and highly pertinent reference, other patents are also quite pertinent, among them Snyder No. 1,166,417, issued December 28, 1915, and an earlier patent to Carr, No. 1,341,043, issued May 25, 1920.

The Shipman patent discloses a separable snap fastener comprising a socket element secured to an article of fabric by means of prongs. The socket element is made from a single sheet of metal in the form of a disk, and fasteners are provided by cutting a series of points or prongs from the body of the disk between the rim thereof and the socket opening and bending them upwardly from the plane of the body. These prongs are forced through the material and clinched in a washer or cap on the upper side thereof or, not using a washer or cap, turned outwardly and downwardly and clamped against the flange of the disk. Figure 1 of the patent, it is true, does not show the clamping of the ends of the prongs on the flange of the disk. It indicates, however, a clamping of the material by the prong ends in opposition to the flange. The patent does not relate especially to carpets or thick materials. If used on thin material, the prongs as illustrated by Figure 1 would either be clamped against the flange or extruded through the opposite side of the material. There would be the same result as to relatively thick material, such as carpets or rugs, if the prongs were as long as indicated in this figure, and in any case they would clamp the material in opposition to the flange. This would seem to be a necessary result of the location of the prongs within the outer periphery of the disk.

The patents in suit do not contemplate any such method of attaching the socket element to the material. The prongs of the fastener arise from the outer periphery of the socket element and are bent outwardly and downwardly in the carpet web. There is no outer flange, as in Shipman, no attempt to use a washer or cap on the upper side of the material, and no clamping of the material in opposition to the flange. The turning of the ends of the prongs downwardly

forms hooks within the material. This securely attaches the socket to the material and provides a relatively wide leverage to be utilized to separate it from the co-operating stud. In our view this method of attachment has sufficient advantages, as distinguished from Shipman, to merit invention over the Shipman device.

Besides utilizing the method of claim 17, the article claims have the elements, not found in Shipman, of a wall seated upon a support beneath the carpet to prevent the tipping of the socket in relation to the stud and provide a fulcrum effect for disengaging the socket from the stud. The advantages of these two coacting elements constituting at once means both for stabilizing and easily separating the socket connection are not only proved by the testimony of witnesses but are evidenced by the success of the fastener and its acceptance by the trade when placed on the market. They alone distinguish the article claims from the Shipman device.

The Snyder patent, which is also relied upon in defense, was designed as a fastener "for use on articles which have to be laundried, such as shirts, undergarments and the like." It discloses a plurality of tongues stamped from the metal of the socket. These tongues are forced through the fabric, turned inwardly to lie close against the vertical wall, and then outwardly and upwardly. The method of attachment is an imitation, as found by the court below, of sewing. Plainly it is different from the Carr method; indeed, we doubt that the device could be put to any practical use without some substitution or reorganization of parts. Other prior patents cited, such as Richardson No. 604,637 and the earlier Carr patent, No. 1,341,043, like Shipman and Snyder, fail of anticipation because of the absence of some one or other element that has contributed to the utility and success of the Carr device. For example, Richardson disclosed a carpet fastener with a socket member sewed to the material. It is true that the specifications of that patent stated that "fastenings of any other nature" might be used for making the attachment, but neither the specifications nor any of the claims disclosed any means except sewing, which is obviously incomparable in utility and efficiency to the patentee's attachment. The earlier Carr patent was for a fastener such as is used on dresses. The integral prongs were bent inwardly, clamping the fabric against the body of the metal. In pulling the fabric to disengage the socket from the stud there was a tendency to pull the threads off the prongs or hooks, whereas in the patents in suit the pull is against the prongs and tends to draw the threads even more securely into the hook.

It is further contended that even if the claims are not anticipated, they show only minor details of construction which would be obvious to any mechanic skilled in the art. The argument is supported by references to prior devices which in the aggregate are said to teach Carr. None of them, however, disclosed a method or article of such simplicity and utility, and none of them was designed, adapted, or used as the Carr patents. The general need for a fastener such as Carr devised is apparent from the fact that almost immediately upon the placing of his apparatus upon the market it became a success, displacing the older type fasteners to such an extent that practically 90 per cent. of all the fasteners that the plaintiff thereafter made were of the new type. The plaintiff itself, apart from its licensee, manufactured and sold approximately ten million of the new fasteners a year. The demand for the fastener was so great that other manufacturers, at least one other beside defendant, began making it. The defendant also has resorted to its manufacture and sale. This acceptance and adoption of the fastener by the trade would hardly have occurred had it not been something new and useful, something that the trade was looking for. We think it was patentable and that both the method claim and the two article claims are valid.

The decree is affirmed.